UNITED STATES of America,
Plaintiff–Appellee,

v.

Alex R. GROTE, Jr.,
Defendant–Appellant.

No. 79–5279
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 14, 1980.

Rehearing and Rehearing En Banc
Denied Dec. 8, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Rip Collins, a Professional Corp., Austin, Tex., for defendant–appellant.

LeRoy Morgan Jahn, Asst. U. S. Atty., San Antonio, Tex., for plaintiff–appellee.

Before HILL, GARZA and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

The appellant, Alex Grote, was convicted under two counts of an information charging him with violating 26 U.S.C. § 7203, in that, for the years 1975 and 1976, he failed to file income tax returns "stating specifically the items of his gross income and any deductions and credits to which he was entitled."[1] On appeal he challenges the trial court's instructions to the jury; the exclusion of evidence offered as relevant to his specific intent; the admission of opinion testimony by an IRS agent concerning the "acceptability" to the Service of those 1040 forms filed by the appellant for the two years in question; the adequacy of his arraignment proceedings; his prosecution under an allegedly unpublicized change in agency policy; and the trial court's exercise of personal jurisdiction over him based on an arrest warrant issued pursuant to an unverified information. Finding no merit in any of appellant's contentions of error, we affirm.

The evidence at trial disclosed that during the years in question the defendant Grote was an employee of the Hill Bookbindery in Austin, Texas. His employer's W–2 forms show that Grote received $10,000 in "wages, tips, and other compensation" in 1975, $10,323.00 in 1976. Grote did not submit his W–2's for either of those years along with his 1040's; instead his returns reported "total income" figures of $155.00 for 1975 and $554.00 for 1976. He attached to his 1975 return a letter explaining his belief, only recently arrived at, that Federal Reserve notes were not "legal money" under the Constitution, and complaining further that his privacy rights are violated by the filing requirements of the income tax laws. Grote applied for a refund of the $177.30 which was withheld by his employer in 1975. No withholdings were made in 1976, presumably the result of a withholding exemption certificate, purportedly filed by Grote in January of that year, in which he stated that he expected to incur no income tax liability in 1976.

The first of Grote's enumerations of error, in the order in which they are said to have occurred, concerns the trial court's jurisdiction over his person. It is undisputed that the defendant's presence at his arraignment proceedings was secured by an arrest warrant issued pursuant to an unverified information. Fed.R.Crim.P. 9(a) provides for the issuance of an arrest warrant for a defendant named in an information, but only "if it is supported by oath . . . ." The procedure for raising objections to the personal jurisdiction of the court, however, is governed by Fed.R.Crim.P. 12.

Rule 12(b)(1) of the Rules of Criminal Procedure requires that objections based on the institution of the prosecution be raised prior to trial, and the failure to adhere to the requirements of that Rule results in a waiver of the objection. Unlike the objections to the subject matter jurisdiction of the court which cannot be waived under Rule 12(b)(1), . . . objections to personal jurisdiction over a particular defendant can be.

1. Record, p. 1.

*United States v. Kahl*, 583 F.2d 1351, 1356 (5th Cir. 1978) (citation omitted). Grote contends that his objection to the court's jurisdiction at arraignment preserves the issue of the defective warrant on appeal.[2] As the motions which were filed by Grote's counsel after arraignment and before trial make clear, however, defendant's objection was to the subject matter jurisdiction of the trial court. R., pp. 22, 44–51. At no time was the trial court's attention ever called to the defective warrant. Grote's failure specifically to object to the personal jurisdiction of the court under the faulty arrest warrant thus constitutes a waiver of that objection under Rule 12(b)(1).

■ Grote next complains of the conduct of the arraignment proceedings. The record discloses that the trial court failed specifically to read the indictment, to read the contents of the information to the defendant or to state to him the substance of the charge.[3] But the record also reveals that, subsequent to the appointment of counsel to represent Grote, a recess in the arraignment proceedings was held in order for counsel to consult with Grote concerning the charges against him.[4] "Vacating convictions for lack of formal arraignment

proceedings is predicated on the existence of possible prejudice." *United States v. Rogers*, 469 F.2d 1317, 1317–18 (5th Cir. 1972). We do not believe that any prejudice has resulted from the failure of the trial judge personally to inform the defendant of the charges against him. The trial judge assigned that responsibility to appointed counsel, and he satisfied himself that that responsibility had been discharged before calling upon the defendant to plead.

■ The appellant next complains of two evidentiary rulings made by the court in the course of trial. The first of these concerns the testimony of David Clore of the IRS. In its effort to prove knowledge on the part of the defendant in failing to make the required disclosures of income on his 1975 and 1976 returns, the Government sought testimony from Clore concerning the contents of Grote's returns for the three years prior to 1975. Throughout this line of inquiry Clore was allowed, over objection, to contrast the evidence of these returns with those of 1975 and 1976 in terms of the "acceptability" of each return to the Service for purposes of computing a tax.[5]

2. Trans., Vol. 1, p. 2:
 "MR. GROTE: Well, I respectfully decline, because this court lacks jurisdiction."
 At p. 5:
 "MR. COLLINS: At this time, Your Honor, I would ask that the Court enter a plea of Not Guilty for Mr. Grote. Mr. Grote has some disagreement about what has been filed against him and the jurisdiction of the Court in this case. I would ask the Court to enter a plea of Not Guilty for him and set it for trial."

3. "Arraignment shall be conducted in open court and shall consist of reading the indictment or information to the defendant or stating to him the substance of the charge and calling on him to plead thereto. He shall be given a copy of the indictment or information before he is called upon to plead." Fed.R.Crim.P. 10.

4. Trans., Vol. 1, pp. 3–6.

5. Trans., Vol. 2, at p. 49:
 "Q: Now, would you look at the return itself? Was it an acceptable return in the eyes of the Internal Revenue Service during 1972?
 A: Yes, Sir.
 MR. COLLINS: Your Honor, I object to the terminology of acceptable. That's yet to be determined by the Court under the law."

At p. 51:
 "Q: And is that [Grote's 1973 return] a proper filing of an Internal Revenue requirement form allowing you to be able to adequately compute whether a tax would be owing or not?
 A: It is.
 Q: Is that an acceptable Internal Revenue form for that reason?
 A: It is acceptable.
 MR. COLLINS: I object to the same word, Your Honor. The use of acceptable."
 At p. 58:
 "Q: All right. Now, what does that mean?
 A: That means Mr. Grote did not file a tax return for the calendar year 1975.
 Q: All right. Does that mean an acceptable tax return that would allow you to–
 MR. COLLINS: Your Honor, I'm going to object to that terminology again, with regard to whether or not they will accept a tax return."
 At p. 60:
 "A: It shows that–There is no return has [sic] posted to Mr. Grote's master file account.
 Q: Does that mean a return acceptable under the law by the Internal Revenue Service which would allow the Internal Revenue Service to compute whether or not he owed taxes for the year, calendar year 1976?
 A: Such return has not been filed.

■ Grote objects to the use of the word "acceptable" as suggesting to the jury that it should defer to the opinion of the IRS on the question of his guilt. This argument is without merit. As the Government's counsel made clear by successive questioning, the purpose of this inquiry was to contrast the contents of those returns which were in fact accepted by the Service with those which were not, in order to show prior knowledge on Grote's part of what was required of him. Clore's qualifications as a witness were as Chief of the Criminal Investigation Staff at the Austin, Texas, Service Center with access to the documents themselves. Trans., Vol. 2, pp. 46–48. As such, his testimony in the form of an opinion concerning the acceptability to the Service of the returns in question is admissible under F.R.E. 701 so long as it is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." The "facts in issue" were the contents of the returns and the inferences that the jury might draw therefrom. It might have been possible for the Government to highlight this contrast without having Clore express an opinion as to the acceptability of any of these returns. But "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." F.R.E. 704. We conclude that it was not an abuse of discretion to admit this testimony.

■ Appellant also objects to the exclusion from evidence of a court opinion which purportedly held that returns substantially similar to Grote's had been accepted by the court and the Government in that prior action. Unfortunately, the record fails to disclose the citation of this authority, so we have no occasion to assess its relevance to Grote's argument that he relied thereon in filing his own returns. This does not foreclose us from ruling on this objection, however, for it appears from the record that Grote's argument was fully developed before the jury. David Martin, the "tax consultant" whose advice is no doubt partly responsible for the trouble Grote finds himself in, was called, recalled, and recalled again, to testify to the defendant's version of this missing judgment. "With the essence of desired evidence before the jury, any harm in the . . . exclusion [of the documentary evidence] was eliminated." *United States v. Sanfilippo,* 581 F.2d 1152, 1155 (5th Cir. 1978). See also *United States v. Ashley,* 555 F.2d 462, 465 (5th Cir. 1977). Since we are unable to conclude that "a substantial right of the [appellant] is affected," F.R.E. 103(a), we find no abuse of discretion in the exclusion of this opinion.

■ When both sides closed, Grote moved the court for a judgment of acquittal. His motion was denied. He contends that it had been the policy of the Government not to prosecute protest tax returns of his variety before 1975, and that his prosecution marked a departure from that alleged policy without the benefit of notice and comment rulemaking. The sole support for the existence of this policy is the cross–examination testimony of Clore that such returns "may have been" accepted before 1975.[6] In short, Grote contends that similar transgressors in the past have not been prosecuted.

Mindful of the separation–of–powers implications permeating this entire area, [this court has held] that in order to make out a claim of selective prosecution, the defendant must show: 1) that others similarly situated have not been prosecuted, and 2) that the Government's prosecution of him is selective, invidious, in bad faith or based on impermissible considerations

Q: Now, Mr. Clore, as a matter of fact, were papers filed by Mr. Grote during the calendar years 1975 and 1976 with the Internal Revenue Service?

A: Certain documents were.

Q: All right. Were you able, based on those documents, to be able to compute whether or not a tax was owing, as required by law, by Mr. Grote for the years 1975 or 1976?

A: No, Sir."

6. Trans., Vol. 2, p. 63.

such as race, religion, or his exercise of constitutional rights.

*United States v. Hayes*, 589 F.2d 811, 819 (5th Cir. 1979) (footnote omitted); *United States v. Kahl*, supra, at 1353. Grote alleges no more than that he has been "caught in the net of increased awareness and sensitivity to particular classes of crimes," *Hayes*, supra, at 818. Alone this fails to support a motion for acquittal.

■ Grote's last objection, in point of time, concerns the trial court's charge to the jury. In the course of its charge the court instructed the jury as follows:

> There are three essential elements which the Government must prove beyond a reasonable doubt in order to establish the offense of failure to file a return as charged in Count One and Count Two of the information.
>
> First, the defendant was required by law or regulation to make a return of his income for the taxable year charged. Secondly, that the defendant failed to make such a return at the time required by law, and
>
> Third, that the defendant's failure to make the return was willful.
>
> You are further instructed that a taxpayer's return which does not contain financial information enabling the Internal Revenue Service to determine the party's tax liability, if any, is not a return within the meaning of the Internal Revenue Code or the regulation adopted by the Commission of Internal Revenue Service.[7]

The correct standard of review to be applied to challenges to jury instructions is whether the court's charge as a whole was a correct statement of law. *United States v. Arguelles*, 594 F.2d 109, at 112, n. 3 (5th Cir. 1979). See also *United States v. Chandler*, 586 F.2d 593 (5th Cir. 1978); *United States v. Sanfilippo*, 581 F.2d 1152 (5th Cir. 1978).

■ Appellant does not object to the first part of the excerpted charge, which we agree accurately sets forth the elements of the crime charged in the information. He argues instead that the "you are further instructed" part of the charge had the effect of directing the jury to find the second element of the offense set forth immediately before, namely, "that the defendant failed to make such a return ...." We cannot agree. This language merely instructed the jury, in light of the evidence that had been introduced at trial, how it might find the existence of the second element of the offense charged, and was an accurate statement of the law. See *United States v. Wade*, 585 F.2d 573, 575 (5th Cir. 1978); *United States v. Johnson*, 577 F.2d 1304, 1311 (5th Cir. 1978). The responsibility to find the second element of the offense was clearly the jury's under the charge as given.

For the reasons stated above, the judgment is AFFIRMED.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before HILL, GARZA, and THOMAS A. CLARK, Circuit Judges.

### PER CURIAM:

The defendant on petition for rehearing strongly urged that in our original opinion we overlooked the defendant's contention that the Internal Revenue Service had violated the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 552(a)(I)(D) and (E).[1] Defendant contends that the Internal Revenue Service had previously determined not to prosecute cases such as his, and had changed this policy without complying with the statute.

---

7. Trans., Vol. 2, pp. 127–28.

1. The statute reads as follows:

  (a) ....

  (1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

    (D) substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

    (E) each amendment, revision, or repeal of the foregoing.

To substantially the same effect is 26 C.F.R. § 601.702(a)(iv) and (v).

Defendant relies on the following testimony from David Clore, Chief of Criminal Investigation Staff at the Internal Revenue Service South Center:

Q Okay. Have you ever seen a tax return like this before? [Petitioner's 1975 and 1976 income tax returns]

A Many of them.

Q Okay. Has the Internal Revenue Service ever accepted this particular tax return?

A Based upon my knowledge, I think prior to our procedure at that time, there may have been returns filed that were accepted by the Internal Revenue Service.

Q So, these in particular–This type of return has before been accepted by the Internal Revenue?

A That's correct....

Q (By Mr. Collins) What is the date that the Internal Revenue–I'm assuming that that is correct, quit accepting this particular type of return?

A In 1974.

Q In 1974. And it is your–Your answer to that question is since 1974 they will not accept [this] type of return; is that correct?

A That is correct.

Defendant also points to the testimony of David Martin who stated that such tax returns had been accepted by the Service prior to appellant's filings to show that the Government had determined not to prosecute cases such as this.

Such evidence is not enough. It does not relate to criminal prosecutions. The defendant has directed us to no previously existing policy of either the Internal Revenue Service or the Justice Department indicating that there was an established practice or policy not to prosecute persons who filed returns similar to those filed by the defendant in this case.

Our original opinion disposed of any contention of the defendant that he might have been selectively prosecuted. His claim that the Internal Revenue Service changed a substantive rule of general applicability without having offered any evidence of the existence of such a rule approaches the frivolous.

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is DENIED.