UNITED STATES of America, Plaintiff-Appellee,

v.

Paul R. STOUT, Defendant-Appellant.

No. 78–2225.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1979.

Decided July 3, 1979.

Rehearing and Rehearing In Banc Denied Aug. 10, 1979.

326

Sheldon R. Waxman, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Julian Solotorovsky, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.*

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

SPRECHER, Circuit Judge.

This appeal is from the conviction of the defendant for failing to supply information to the government relative to his federal income tax.

## I

The defendant was indicted in four counts, the first three charging him with failure to file returns, supply information, or pay federal income tax for the years 1973, 1974 and 1975, in violation of 26 U.S.C. § 7203[1] and the fourth count charging him with supplying a false or fraudulent statement or failure to supply information in 1974, in violation of 26 U.S.C. § 7205.[2] The jury found the defendant guilty on all counts and he was sentenced to one year incarceration, five years probation and a fine of $6,500.

During the years in question, the defendant was employed by Quaker Oats Company, which issued W–2 forms to the defendant, indicating wages of $30,342.88 in 1973, $23,841.79 in 1974, and $25,741.27 in 1975. During these same years the defendant filed a W–4 form with his employer in which he claimed 34 withholding allowances. The defendant is married and has three children. Due to the 34 allowances, no money was withheld by the employer for federal income tax in the three years. No returns were timely filed for 1973, 1974 or 1975.

On February 17, 1977, the defendant filed a 1973, a 1974 and a 1975 Form 1040, which were completely blank except for taxpayers' (husband defendant and wife) names, address, the defendant's social security number, filing status, claiming of three exemptions, the first name of one dependent child, and two asterisks (* *) opposite each line. Each form had attached to it 48 pages, one of which explained the double asterisks as meaning:

Specific objection is made to this question under the Fifth Amendment, U. S. Constitution, as to Federal Reserve Notes and rights under said Amendment; and similar objection is made to the question under the First, Fourth, Seventh, Eighth, Ninth, Tenth, Thirteenth, Fourteenth, and Sixteenth Amendments.

The other pages of attachments included affidavits by the defendant that he was confused about the meaning of "dollars"; a copy of the Constitution of the United States; copies of what are apparently the partial contents of the Internal Revenue Service's files as of July 20, 1976, relating to the defendant, obtained by him in response to his Freedom of Information and Privacy Act requests; copies of newspaper clippings; copies of letters by the defendant to several Congressmen complaining that the I.R.S. was collecting dossiers of newspaper clippings containing defendant's various letters-to-the-editor critical of the I.R.S. and some of the Congressmen's replies to the defendant.

In none of the above material was any information given in regard to the defendant's or his spouse's income or was any information furnished from which such income could be determined.

---

1. 26 U.S.C. § 7203 provides:

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

2. 26 U.S.C. § 7205 provides:

Any individual required to supply information to his employer under section 3402 who willfully supplies false or fraudulent information, or who willfully fails to supply information thereunder which would require an increase in the tax to be withheld under section 3402, shall, in lieu of any other penalty provided by law (except the penalty provided by section 6682), upon conviction thereof, be fined not more than $500, or imprisoned not more than 1 year, or both.

## II

The defendant has appealed his conviction upon several grounds, the first of which is that he was selectively prosecuted, relying principally upon *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973). In *Falk* the defendant, who was prosecuted for failure to have in his possession a selective service registration card or a draft classification card, had offered to prove that over 25,000 persons had dispossessed themselves of their draft cards, that the government had published its policy not to prosecute violators, that Falk was an active and vocal dissenter to the draft and the Vietnam War, that he was advised by a government prosecutor that he had been singled out for prosecution because of his anti-draft activities and his prosecution had been approved by a chain of high officials of the Justice Department.

██ The only one of these various *Falk* facts that the defendant here showed was that he was an active tax protestor, but he did not show that the government has a policy of not prosecuting other persons who fail to file their returns or supply information. All that he showed was that his activity may have attracted attention that he was likely to be violating the tax laws, which situations the government prosecutes to the extent that it has knowledge of the violations and to the extent of its physical capabilities to prosecute the volume of cases presented.

Virtually the same kind of showing in similar cases has uniformly resulted in a holding of failure to establish selective prosecution. *United States v. Berrios*, 501 F.2d 1207, 1211 (2nd Cir. 1974); *United States v. Swanson*, 509 F.2d 1205, 1208–1209 (8th Cir. 1975); *United States v. Scott*, 521 F.2d 1188, 1195 (9th Cir. 1975) ("Appellant fails in his claim of discriminatory prosecution because he had not demonstrated that others similarly situated who have failed to file income tax returns have not been prosecuted."); *United States v. Gardiner*, 531 F.2d 953, 954 (9th Cir. 1976) ("'[A]ppellant was in clear violation of the law and the authorities had no choice but to prosecute him.'"); *United States v. Kahl*, 583 F.2d 1351, 1353–1354 (5th Cir. 1978). As the court observed in the *Scott* case at 1195:

It is not surprising that the government might prosecute those cases in which the violations of the tax laws appear most flagrant.

██ Aggressively displaying one's antipathy to the income tax system or daring the government to enforce it does not create immunity from, or a defense to, prosecution.[3] So long as the government also prosecutes other delinquent taxpayers there is no discrimination. Nor did the defendant make any showing sufficient to require an evidentiary hearing on that subject.[4]

## III

██ The defendant has argued that "this prosecution violates the public policy which encourages the filing of the forms." The argument seems to be that the defendant was punished merely for filing the three blank Form 1040 returns.

In the first place, we held in *United States v. Jordan*, 508 F.2d 750, 752 (1975), *cert. denied*, 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 62 (1975) that:

In filing I.R.S. forms 1040 containing only the defendant's name, address, Social Security Number and a blanket declaration regarding his Fifth Amendment privilege, defendant failed to file a return as required by law.

See also, *United States v. Porth*, 426 F.2d 519, 523 (10th Cir. 1970), *cert. denied*, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970); *United States v. Daly*, 481 F.2d 28, 29–30

---

**3.** The defendant objected, by means of a letter to President Ford, to an I.R.S. attempt to learn from his employer the tax information which he denied them, in which letter he demanded that the president "report to me within ten days." In a letter to a revenue officer the defendant says "send me a statement signed under penalty of perjury that this is the exact amount of [telephone] tax that I owe."

**4.** Defendant conceded that he was not prosecuted because of his race, religion, color or national origin.

(8th Cir. 1973), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973); *United States v. Johnson,* 577 F.2d 1304, 1310–1311 (5th Cir. 1978).

■ Second, the defendant was a target of criminal prosecution prior to his filing the untimely blank returns on February 17, 1977.[5] In fact about ten months earlier on April 28, 1976, I.R.S. agents had read the defendant his Constitutional rights. Therefore, he was not punished for filing the blank returns but for failure to file timely returns.

■ Finally the defendant has shown no policy of I.R.S. that tends to encourage the filing of blank returns.

■ Next the defendant argued that the evidence submitted by the government concerning the amount of his income and obtained through the use of an I.R.S. administrative summons while the grand jury proceedings were in progress should have been suppressed. The record does not show if and when an I.R.S. summons was used and, if used, whether a grand jury investigation was then in progress. Lacking these facts, we cannot speculate about them.

■ The defendant also argued that it was improper for the Court to allow admission of evidence of the defendant's prior and subsequent conduct as to filing tax returns. This evidence supports a finding that the defendant knew that he was required to file returns and that therefore when he failed to file them, he did so willfully.

We have often approved the admission of such evidence. *United States v. Farris,* 517 F.2d 226, 229 (7th Cir. 1975), *cert. denied,* 423 U.S. 892, 96 S.Ct. 189, 46 L.Ed.2d 123 (1975); *United States v. McCabe,* 416 F.2d 957, 958 (7th Cir. 1969). See also, F.R.Evid. 404(b).

■ The defendant next argued that the court erred in giving the following instruction:

A defendant who wishes to testify is a competent witness and his testimony should not be disbelieved merely because he is a defendant. However, in weighing his testimony, the jury should consider the fact that the defendant has a vital interest in the outcome of his trial.

We have held that this instruction is not prejudicial in *United States v. Crovedi,* 467 F.2d 1032, 1035–1036 (7th Cir. 1972), *cert. denied,* 410 U.S. 990, 93 S.Ct. 1510, 36 L.Ed.2d 189 (1973), but the defendant has argued that it should be reversed. We decline to do so.

■ The defendant has argued that the sentence was excessive, being one year of incarceration, five years probation, and a $6,500 fine. The maximum possible sentence was four years of incarceration and a $30,500 fine. In *Dorszynski v. United States,* 418 U.S. 424, 440–441, 94 S.Ct. 3042, 3051, 41 L.Ed.2d 855 (1974), the Chief Justice quoted the often reiterated statement that:

If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute.

■ The defendant finally complained that his "probation is conditioned on the timely filing of tax forms." In *United States v. Kahl,* 583 F.2d 1351, 1356–1357 (5th Cir. 1978), the court said:

Kahl challenges the order of the district court requiring him to provide copies of his income tax returns during the period of his probation. . . . In light of the crime of which Kahl was convicted, the conditions placed upon his probation were reasonable and clearly not an abuse of discretion.

The defendant has raised some other issues which we have considered and rejected. The judgment of conviction is affirmed.

Affirmed.

---

**5.** The indictment was filed on September 21, 1977.