[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13160
Non-Argument Calendar
_____

D.C. Docket No. 2:12-cv-04145-SLB-JEO

RICKY WALTER DENTON,

Plaintiff-Appellant,

versus

PAT STOKES,
SA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 14, 2015)

Before ED CARNES, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Ricky Walter Denton, a federal prisoner proceeding pro se, sued FBI Special Agent Pat Stokes for allegedly violating Denton's Fourth Amendment rights.[1] See generally Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S. Ct. 1999 (1971). Before Stokes was served with Denton's complaint, the district court sua sponte dismissed it without prejudice for failing to state a claim upon which relief could be granted. See 28 U.S.C. § 1915A (requiring district courts to screen civil actions filed by prisoners against government officers). Denton appeals that dismissal.

We take the allegations in Denton's complaint as true. Alba v. Montford, 517 F.3d 1249, 1251–52 (11th Cir. 2008). A federal bank robbery investigation led to Denton's convictions for armed bank robbery, 18 U.S.C. § 2113(a), (d), and for brandishing a firearm during a crime of violence, id. § 924(c)(1)(A)(ii). After the investigation had begun but before his convictions, he was incarcerated in the county jail for a probation violation. During that incarceration, Stokes seized Denton's nonlegal correspondence, photocopied it, and showed the copies to Denton's fiancée and his son. The correspondence included letters to women other than Denton's fiancée and letters that made unflattering comments about his son.

---

[1] Denton's Fourth Amendment claim is the only one that he has properly raised on appeal. He raised several other constitutional claims in the district court, but he has expressly abandoned those claims. Additionally, he attempts to add a First Amendment claim, but we do not consider it because he did not raise it before the district court. See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

2

According to Denton, Stokes hoped the letters would encourage them to testify for the government at trial.

We review de novo the district court's decision to dismiss Denton's Fourth Amendment claim against Stokes. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1278–79 (11th Cir. 2001). Construing the complaint liberally, see Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006), it sought damages from Stokes in both his official and individual capacities. By seeking official capacity damages, Denton is actually seeking to impose liability on Stokes' employer, the FBI, for Stokes' allegedly unconstitutional actions. See Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985). The Bivens theory of liability does not allow Denton to recover damages from the FBI. Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003); see Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70, 122 S. Ct. 515, 521 (2001) ("[T]he threat of suit against an individual's employer was not the kind of deterrence contemplated by Bivens."). Denton may seek damages against Stokes only in his individual capacity.

Such damages are available as a general matter, but Denton must overcome qualified immunity to get them. See 28 U.S.C. § 1915A(b)(2) (requiring dismissal of prisoner complaints that "seek[] monetary relief from a defendant who is immune from such relief"); Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998) (applying our qualified immunity precedent under 42 U.S.C. § 1983 and

3

Bivens interchangeably).  He may receive damages only if he can show that Stokes violated clearly established Fourth Amendment law by seizing Denton's nonlegal correspondence, photocopying it, and disclosing the copies to third parties as part of the ongoing federal investigation.  Otherwise, Stokes is entitled to qualified immunity.  See Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011).

At the time that Stokes seized, photocopied, and disclosed Denton's nonlegal correspondence, it was not clearly established that doing so violated the Fourth Amendment.  We had held that both the Sixth Amendment and the "right of access to the courts" limit the reading of correspondence from inmates with their attorneys.  See Taylor v. Sterrett, 532 F.2d 462, 472–75 (5th Cir. 1976).[2]  We had also held that the First Amendment limits efforts to control of the volume of nonlegal, "general correspondence" that inmates send and receive.  Guajardo v. Estelle, 580 F.2d 748, 753–56 (5th Cir. 1978).[3]  But we had not held (and still have not held) that the Fourth Amendment bars the reading, photocopying, and disclosing of inmates' nonlegal correspondence as part of an ongoing investigation.  There are some indications that it may not.  See Hudson v. Palmer, 468 U.S. 517, 526, 104 S. Ct. 3194, 3200 (1984) ("The recognition of privacy rights for prisoners

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[3] Both Taylor and Guajardo are still the law of this Circuit, but we have read them in light of more recent Supreme Court decisions.  See Al-Amin v. Smith, 511 F.3d 1317, 1330–32 (11th Cir. 2008).

4

in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions."); Gassler v. Wood, 14 F.3d 406, 408–10 (8th Cir. 1994) (finding no First Amendment violation where prison officials seized a prisoner's nonlegal correspondence, photocopied it, and disclosed the copies to law enforcement as part of an ongoing investigation); cf. United States v. Wilson, 671 F.2d 1291, 1294 (11th Cir. 1982) (distinguishing Taylor and Guajardo because neither case involved the Fourth Amendment).

In any event, we need not decide the merits of Denton's Fourth Amendment claim to resolve this appeal, so we express no view on it. It is enough that no precedent of the Supreme Court or this Court would have put Stokes on notice that the Fourth Amendment prohibited him from seizing Denton's nonlegal correspondence while he was incarcerated, photocopying it, and showing those copies to others as part of an ongoing investigation. See Coffin, 642 F.3d at 1013. That being the case, Stokes is entitled to qualified immunity from Denton's claim.[4] See id.

**AFFIRMED.**

---

[4] Although § 1915A(b)(2) required dismissal of Denton's complaint, he still had a right to amend it under Federal Rule of Civil Procedure 15. Brown v. Johnson, 387 F.3d 1344, 1349 (11th Cir. 2004). He does not argue on appeal that the district court should have granted him leave to amend his complaint, so we do not consider that argument. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).